872 F.2d 1023
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Archie BAKER, Plaintiff-Appellant,
v.
Perry M. JOHNSON, et al., Defendant-Appellee.
 No. 88-1295.
 United States Court of Appeals, Sixth Circuit.
 Feb. 27, 1989.
 
 Before KENNEDY and DAVID A. NELSON, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a pro se civil rights case brought by a Michigan prison inmate. The case reaches us on appeal from a district court order granting summary judgment for the defendants. The plaintiff advanced Eighth Amendment claims concerning his conditions of confinement, Fourteenth Amendment claims involving various administrative and disciplinary hearings, and certain First Amendment claims. We conclude that summary judgment was proper.
 
 
 2
 * A disturbance occurred at the State Prison of Southern Michigan on May 22, 1981. At the time the disturbance broke out, plaintiff Baker was away from his cell on a pass and was waiting outside the gate to his cellblock. A crowd of prisoners attempted to break through the gate with a crowbar. Prison officials say that Mr. Baker was involved in the attempts to pry open the gate; he insists that he was an innocent bystander.
 
 
 3
 After the riot was quelled and the prison put on general lockdown status, Mr. Baker was charged with the offense of "inciting a riot." A hearing officer found him guilty and imposed a punishment of five days in punitive segregation. At the conclusion of the five days Mr. Baker was put in administrative segregation, where he remained for nearly a year. No further hearing was held.
 
 
 4
 Mr. Baker filed a civil rights complaint in district court, and the case was referred to a United States Magistrate. The defendants moved to dismiss, or in the alternative for summary judgment. The plaintiff later filed an amended complaint, and later still tendered a "supplemental complaint."
 
 
 5
 The district court granted the defendants' motion to dismiss in a brief order unaccompanied by any statement of reasons. This court vacated the judgment and remanded the case for further consideration. We were concerned by the fact that the district court had "failed to give any reasons to support the award of summary judgment," and we noted that although the case had been referred to a magistrate, "the Magistrate never filed a report and recommendation before the district court entered its final judgment."
 
 
 6
 On remand, the district court entered a new order of reference assigning the case to a different magistrate. The magistrate filed a lengthy report recommending that the court grant summary judgment for the defendants on all of Mr. Baker's claims. The district court approved the magistrate's report and recommendation as written, and specifically adopted, as the court's own findings of fact, the portion dealing with the Eighth Amendment claims. This appeal followed.
 
 II
 
 7
 We address the Eighth Amendment claims first. Mr. Baker alleges that certain conditions in the administrative segregation unit violated his constitutional right to be held under minimally decent conditions. See Rhodes v. Chapman, 452 U.S. 337 (1981). Because this claim arises in the context of a Sec. 1983 damages action brought against individual government officials, it is necessary to determine whether the defendants enjoyed qualified immunity from suit. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In making this determination, we must look to whether the defendants' actions violated the plaintiff's clearly established constitutional rights. Anderson v. Creighton, --- U.S. ----, 97 L.Ed.2d 523, 530 (1987).
 
 
 8
 The conditions of which Baker complains are alleged to have obtained from June 1981 through August of 1981. The magistrate and the district court concluded that the "defendants should not have been expected to know ... at the time" that Baker was constitutionally entitled to clean eating utensils, a toothbrush, toothpaste, soap, a clean sink and toilet, etc. During Baker's confinement in the administrative segregation unit, the Supreme Court "consider[ed] ... for the first time the limitation that the Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, imposes upon the conditions in which a State may confine those convicted of crimes." Rhodes v. Chapman, 452 U.S. 337, 344-45 (1981) (emphasis added; citation omitted). As of the summer of 1981, there were no cases that would have told the officials running the Jackson prison just how often the Constitution required them to clean Baker's toilet or provide him with new cutlery, or whether particular items like toothpaste or soap had to be provided at certain intervals. It is also significant that the conditions in question obtained only for the three months immediately following the riot. See Hutto v. Finney, 437 U.S. 678, 686-87 (1978). Some of the conditions are alleged to have improved even before the end of the summer of 1981. The actions of prison officials are due special deference, moreover, when there is "actual unrest and conflict." Whitley v. Albers, 475 U.S. 312, 321 (1986) (emphasis in original). We do not think that the actions taken by Jackson prison officials in the summer of 1981 violated the plaintiff's "clearly established" constitutional rights. See also Birrell v. Brown, --- F.2d ---- (6th Cir. Feb. 13, 1989).
 
 III
 
 9
 Baker challenges the procedural regularity of the hearing at which he was found guilty of inciting to riot. The district court correctly determined that the hearing satisfied the minimal due process requirements outlined in Wolff v. McDonnell, 418 U.S. 539 (1974). Wolff requires nothing more than a hearing with advance notice to the prisoner and a written explanation of the reasons for the hearing officer's decision. Prison officials are given considerable leeway in deciding whether to allow the prisoner to call witnesses. In Baker's case, a formal hearing was convened on June 16. It was adjourned so that the hearing officer could take statements from witnesses, and it was reconvened on June 17. A written statement of reasons was provided. Baker was given proper notice of the hearing. One witness Baker had asked to be called was not located, but under the circumstances, particularly in the wake of the disturbances at the prison, this did not rise to the level of a due process violation.
 
 
 10
 Baker also challenges his assignment to administrative segregation after his five-day stay in punitive segregation. The Supreme Court has held that a full Wolff hearing is not required before a prisoner is transferred "to less amenable and more restrictive quarters for nonpunitive reasons." Hewitt v. Helms, 459 U.S. 460, 468 (1983). "[A]n informal, nonadversary evidentiary review," accompanied by "some notice" to the inmate and an opportunity for the inmate to present his views to the decisionmaker, is enough to meet constitutional requirements. Id. at 476.
 
 
 11
 Of course, prison officials may not get around the requirement of a Wolff hearing by recharacterizing punitive segregation as "administrative" or "nonpunitive." Courts will sometimes need to draw close distinctions in policing "this due process distinction between punishment for a rule infraction and 'segregation to safeguard institutional safety.' " Woodson v. Lack, --- F.2d ---- (6th Cir. Jan. 13, 1989). These problems do not concern us here, however, for Baker had already had one full Wolff hearing before his initial placement in punitive segregation, and we have previously held that a Wolff hearing held before a prisoner is put in punitive segregation can serve as the basis for putting the prisoner in administrative segregation later. Walker v. Mintzes, 771 F.2d 920, 932-34 (6th Cir.1985).
 
 
 12
 Baker alleges that the prison neglected his various medical problems. The record contains voluminous evidence of treatment for Baker's swollen knees and other medical problems. Baker's dissatisfaction with the course of that treatment and his occasional inability to get guards to take him to scheduled appointments does not rise to the level of "deliberate indifference" to his serious medical needs.
 
 
 13
 Baker's claim that he was unconstitutionally denied the opportunity to take part in religious services is precluded by this court's holding in Walker v. Mintzes that
 
 
 14
 "[t]he court must defer to the prison administrators' determination that in the near term post-riot environment, correctional officers did not have the ability to both ensure security and discipline and maintain the pre-riot level of congregate religious services.... [T]he deprivation is not violative of the first amendment so long as the inmates' rights of conscience are not infringed and they can request individual religious counseling."
 
 
 15
 771 F.2d at 930. Baker also alleges that his access to the prison law library was impermissibly restricted during the post-riot period. This claim fails as well.
 
 
 16
 "We are concerned with a right of access to the courts, not necessarily to a prison law library.... '[P]rison regulations which reasonably limit the times, places, and manner in which inmates may engage in legal research and preparation of legal papers do not transgress the constitutionally protected rights so long as the regulations do not frustrate access to the courts.' "
 
 
 17
 Id. at 932 (emphasis in original) (quoting Twyman v. Crisp, 584 F. 352, 358 (10th Cir.1978)). As the magistrate stated, "There is no assertion [in the present case] that plaintiff has been denied access in his communications with this court regarding his litigation."
 
 
 18
 Baker alleges a number of miscellaneous incidents of harassment by prison authorities. None of these complaints, which are discussed thoroughly in the magistrate's report and recommendation, is serious enough to violate Baker's federal constitutional rights.
 
 
 19
 The magistrate's report and recommendation also addresses various allegations raised for the first time in the supplemental complaint. We believe summary judgment was proper on these claims.
 
 
 20
 The judgment of the district court is AFFIRMED.